UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-14481-CIV-CANNON/MAYNARD

**ROSEMARY FIORENZA,**

    **Plaintiff,**

v.

**KILOLO KIJAKAZI, ACTING
COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION,**

    **Defendant.**
_____/

## REPORT AND RECOMMENDATION

**THIS CAUSE** is before me on Plaintiff's Motion for Summary Judgment (DE 16) and Defendant's Motion for Summary Judgment/Response (DE 21). Having reviewed the pleadings, and the administrative record, I respectfully **RECOMMEND** that Defendant's administrative decision be **AFFIRMED** for the reasons set forth below.

## BACKGROUND

This case involves a determination of Plaintiff Rosemary Fiorenza's ("Plaintiff's") application for disability insurance benefits filed on January 28, 2020. R. 228. Plaintiff initially alleged disability beginning on March 16, 2018, due to anxiety, depression, chronic neck pain, osteoarthritis of the lower back, osteoarthritis of the upper body, diabetes, obesity, sleep apnea, COPD[1] and chronic bronchitis. R. 268, 271.[2]

---

[1] Chronic Obstructive Pulmonary Disease is a long-term lung disease that results in breathing difficulty. *See* https://www.lung.org/lung-health-diseases/lung-disease-lookup/copd (last visited January 8, 2023).

[2] A 920-page certified transcript (DE 10) contains the entire administrative record. The transcript index (DE 10 at page 2-5) identifies each document or set of documents by exhibit number and description. I will cite to the transcript as "R." followed by the page number(s) listed on the index and located at the bottom right-hand corner of each page.

Plaintiff was 62 on her alleged onset date of March 16, 2018, with education through the eleventh grade and past relevant work as the composite job of a mail supervisor and a mail carrier. R. 18, 268, 272. Plaintiff's application was denied initially and upon reconsideration. R. 90, 108. At Plaintiff's request, Administrative Law Judge ("ALJ") James Andres held a hearing on March 8, 2021. R. 30-52. Plaintiff was represented by Ms. Natalie Burns, Esq. R. 30. Medical Expert Subramanian Krishnamurthi and vocational expert ("VE") Jeff Barrett were also in attendance. R. 30. The ALJ issued an unfavorable decision on April 9, 2021, finding Plaintiff not disabled from March 16, 2018 through the date of the decision. R. 18.

On October 18, 2021, the Appeals Council denied Plaintiff's timely request for review, making the ALJ's decision the final decision of the Commissioner. R. 1-3. Plaintiff has exhausted her administrative remedies and now seeks judicial review of the Commissioner's final decision under 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

To qualify for Social Security benefits, a claimant must show that she is disabled. *Ellison v. Barnhart,* 355 F.3d 1272, 1276 (11th Cir. 2003); *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001); 20 C.F.R. §§ 404.1512(a), 416.912(a). The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment" is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D).

A disability benefits claim follows a multi-layered process before it can be reviewed in federal court. A claimant first applies to a state agency for disability determinations, 42 U.S.C. § 421(a), after which the claimant is entitled to an evidentiary hearing before an ALJ. *Heckler v. Day*, 467 U.S. 104, 106–07 (1984). An ALJ must perform a "five-step sequential evaluation" to determine if a claimant is disabled. 20 C.F.R. § 404.1520(a)(1). This five-step process determines if a claimant (1) is currently employed; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or equals an impairment listed in 20 C.F.R. pt. 404, subpt. P, app. 1 (the "Listings"); (4) can perform past relevant work based on a residual functional capacity ("RFC") assessment; and (5) retains the ability to perform any work in the national economy. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011); *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant has the burden of proof through step four and then the burden shifts to the Commissioner at step five. *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018); *Hines–Sharp v. Comm'r of Soc. Sec.*, 511 Fed. Appx. 913, 915 n.2 (11th Cir. 2013). If an individual is found disabled or not disabled at any step, further inquiry is unnecessary. 20 C.F.R. § 416.920(a).

A claimant may appeal an ALJ's unfavorable decision to an Appeals Council that must review the case and determine if the ALJ's "action, findings, or conclusion is contrary to the weight of the evidence currently of record." *Heckler*, 467 U.S. at 106-07; 20 C.F.R. § 404.970(a). After completing the foregoing administrative process, a claimant may seek review in federal court. 42 U.S.C. § 405(g); *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1261 (11th Cir. 2007).

Under governing regulations, the Social Security Administration conducts its "administrative review process in an informal, non-adversarial manner." 20 C.F.R. § 404.900(b). Unlike judicial proceedings, social security administrative hearings "are inquisitorial rather than

adversarial." *Washington*, 906 F.3d at 1364 (quoting *Sims v. Apfel*, 530 U.S. 103, 111 (2000)). "Because Social Security hearings basically are inquisitorial in nature, '[i]t is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits.'" *Id.* Indeed, "at the hearing stage, the Commissioner does not have a representative that appears 'before the ALJ to oppose the claim for benefits.'" *Id.* (quoting *Crawford & Co. v. Apfel*, 235 F.3d 1298, 1304 (11th Cir. 2000)). "Thus, 'the ALJ has a basic duty to develop a full and fair record. This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts.'" *Id.* (quoting *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015)).

On review in federal court, the scope of review is limited to determining if (1) substantial evidence supports the Commissioner's findings, and (2) the correct legal standards were applied. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). To make this determination, a reviewing court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.*

In testing for substantial evidence, a court may not "reweigh the evidence" or "decide the facts anew." *Winschel*, 631 F.3d at 1178. Instead, so long as the ALJ's findings are supported by substantial evidence, they are conclusive, and the court must defer to the ALJ's decision even if the evidence preponderates against it. *Crawford*, 363 F.3d at 1158-59. However, the court will not "merely rubber-stamp a decision ... [and] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Schink v. Comm'r of*

*Soc. Sec.*, 935 F.3d 1245, 1257 (11th Cir. 2019); *see also Simon v. Comm'r, Soc. Sec. Admin.*, 7 F.4th 1094, 1104 (11th Cir. 2021) ("Within this narrowly limited role, however, the federal courts 'do not act as automatons' … '[w]e retain an important duty to 'scrutinize the record as a whole' and determine whether the agency's decision was reasonable") (quoting *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986)). Remand is appropriate for further factual development where the record reveals evidentiary gaps that result in unfairness or clear prejudice. *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1358 (11th Cir. 2018).

A reviewing court is also required to review the ALJ's decision to determine if the correct legal standards were applied. *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide sufficient reasoning for determining that the proper legal analysis has been conducted, then the ALJ's decision must be reversed. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## THE ALJ'S DECISION

The ALJ in this case proceeded through the five-step analysis as follows: At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of March 16, 2018. R. 12. At step two, the ALJ found that Plaintiff had the following severe impairments: obesity, diabetes mellitus, and degenerative joint disease of the cervical spine.[3] R. 24-25. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equaled the severity of an agency-listed impairment in the Listings. R. 14. As a predicate to step four, the ALJ found that Plaintiff had the RFC to perform work at the light level with the following additional limitations: Plaintiff could never climb ladders,

---

[3] The ALJ also noted that Plaintiff had been diagnosed with depressive disorder and anxiety disorder, which were acknowledged by the ALJ but found to be non-severe. R. 13.

scaffolds, and ropes; can occasionally perform postural movements; can have no exposure to heights or dangerous machinery; can frequently use her hands overhead bilaterally; can frequently use her hands for manipulative activities in all other directions bilaterally; and can stand one to two hours at one time for a total of six hours in an eight hour workday. R. 15-17. At step four, based on testimony from the VE, the ALJ found that Plaintiff is able to perform past relevant work as the composite job of a mail supervisor and a mail carrier as the job was actually performed. R. 18. Therefore, the ALJ concluded that Plaintiff had not been disabled within the meaning of the Social Security Act from March 16, 2018, through April 9, 2021. R. 18.

## DISCUSSION

Plaintiff makes one argument in her motion for remand:

- The ALJ erred by finding Plaintiff capable of performing her past relevant work as a composite job of both mail supervisor and mail carrier because the VE testified to the contrary at Plaintiff's hearing before the ALJ.

DE 16 at 16-20. According to Plaintiff, the VE "unequivocally testified that [Plaintiff] could not perform the required *standing and walking requirements* of the mail carrier" portion of the composite job. DE 16 at 17 (emphasis added).

"A composite job is one that has 'significant elements of two or more occupations and as such, [has] no counterpart in the [Dictionary of Occupational Titles ("DOT")].'" *Smith v. Comm'r of Soc. Sec.*, 743 F. App'x 951, 954 (11th Cir. 2018) (quoting SSR 82-61 at *2). The Program Operations Manual System ("POMS") states that "a claimant [is] capable of performing [a] composite job only if he or she can perform all parts of the job." POMS, DI 25005.020(B).[4] Because composite jobs do not have a DOT counterpart, whether a plaintiff can perform such a

---

[4] The Social Security Program Operations Manual System ("POMS") is found on the website of the Social Security Administration: https://secure.ssa.gov/poms nsf/lnx/0425005020 (last visited January 9, 2023). POMS does not have the force of law; however, it is considered persuasive authority. *Smith v. Comm'r of Soc. Sec.*, 743 F. App'x 951, 954 (11th Cir. 2018) (citations omitted).

job is evaluated only based on how the work is actually performed and not based on how the work of the multiple DOT positions is performed generally in the national economy. *Smith*, 743 F. App'x at 954 ("When the claimant's previous work qualifies as a composite job, the ALJ must consider the particular facts of the individual case to consider whether the claimant can perform his previous work as actually performed."). Furthermore, [t]he claimant is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining the skill level; exertional demands and nonexertional demands of such work." SSR 82-62, at *3 (S.S.A. 1982). Moreover, because the decision about whether a plaintiff can perform her past relevant work has far-reaching implications, an ALJ must make every effort "to secure evidence that resolves the issue as clearly and explicitly as circumstances permit." *Id.*

In determining whether Plaintiff can perform her past relevant work at step 4, the ALJ states:

> The vocational expert testified that the claimant had past work as the composite job of: a mail supervisor (Dictionary of Occupational Titles 230.137-018, Specific Vocational Preparation 6), which is light work; and a mail carrier (DOT 230.367-010, SVP 4) which is medium work per the DOT, but the claimant performed it at the light level. The claimant's past work is past relevant work since the claimant performed the position within 15 years of the date of adjudication (i.e., 2006-2018), for the required duration (i.e., over one year), and with earnings at the substantial gainful activity level (Hearing Testimony; 10D; 2E/3-4; 10E).
>
> In comparing the claimant's residual functional capacity with the physical and mental demands of this work, the undersigned finds that the claimant is able to perform the work as actually performed. The vocational expert testified that, with the above residual functional capacity, an individual with the claimant's age, education, and work experience could perform the claimant's past work as it was actually performed. The vocational expert testified that the demands of the work as it was actually performed is not inconsistent with the claimant's residual functional capacity. Pursuant to SSR 00-4p, the undersigned has determined that the vocational expert's testimony is consistent with the information

> contained in the Dictionary of Occupational Titles except for the overhead reaching limitation which the vocational expert based on professional experience placing individuals and observing jobs.
>
> Based on the testimony of the vocational expert, the undersigned finds that the claimant is capable of performing the past relevant work as the composite job of a mail supervisor and a mail carrier.

R. 18.

Thus, the ALJ applied the correct legal standard by focusing on whether Plaintiff could perform her past composite job *as it was actually performed*, instead of as it is generally performed in the national economy. *Smith*, 743 F. App'x at 954 ("When the claimant's previous work qualifies as a composite job, the ALJ must consider the particular facts of the individual case to consider whether the claimant can perform his previous work as actually performed."). That is important because Plaintiff cannot perform the job of mail carrier as it is generally performed in the national economy since it is generally performed at the medium level and Plaintiff is limited to light work. If Plaintiff actually performed her mail carrier duties at the light exertion level, however, then she can perform her past relevant work.

The ALJ's decision that Plaintiff can perform her past relevant work as a composite mail supervisor and mail carrier is supported by substantial evidence. Plaintiff testified that after 2010 she was a supervisor of mail carriers and mail clerks. R. 40. In addition to her supervisory duties, she also delivered express mail in the afternoons after the carriers were gone for the day. R. 41. She would either bring the express mail out to the carriers to deliver, or she would deliver the express mail herself, depending on how much there was. R. 41. Plaintiff testified that "there was nothing heavy in the delivery of express mail, anything over 10 pounds." R. 43. Plaintiff's "clerk would load up the mail truck," and then Plaintiff would bring the express mail out to the carriers

or just deliver it herself to buildings and condos in Palm Beach, which "have people at the front desk that take the packages to them for the people that lived there, so it was easy." R. 43-44.

Based on her testimony, the VE concluded that Plaintiff previously had a composite job that included supervisor (light duty) and mail carrier (medium duty as generally performed, but light duty as Plaintiff actually performed it). R. 41-42, 44. The VE testified that the mail carrier part of Plaintiff's composite work was "performed at light duty because she was not carrying full loads and not carrying heavy mail." R. 43. The ALJ then asked the VE whether a hypothetical individual with Plaintiff's RFC could perform Plaintiff's previous composite job. The VE responded affirmatively. R. 46.

In response to questions from Plaintiff's attorney on cross examination, the VE further clarified his testimony:

> Q: Okay. So, she would not be able to perform the complete composite position, is that your testimony?
>
> A: **No, she would not be able to perform the mail carrier position in full. That's medium duty. But as performed with the composite, that's still at light. She would be able to perform that.**
>
> Q: Even with only the ability to stand for only one to two hours at a time?
>
> A: As a supervisor, she would have the option, and they do have required desk work. So that –
>
> Q: Sure, but as a mail carrier – right, but there's two parts to the job. I understand as a supervisor, you might have that option, but as a mail carrier, you would have that option?
>
> A: **She's driving most of the time, delivering those express mail packages. There's no standing performing that specific duty.**
>
> Q: But it's defined as medium performed at light, which would be at least six hours out of an eight-hour day standing. So, if an individual could only stand for one –
>
> A: **You're confusing my testimony. If she is purely a mail carrier, she could not perform that because it's medium duty. It does require extensive standing**

> **and walking, and while there is intermittent sitting, that would not be within this hypothetical. But when we discussed the supervisor, mail, and look at the composite, which is only a small part of the mail carrier responsibility, and it's light duty as performed, she would be able to perform that.**

R. 47-48 (emphasis added).

The VE's testimony supports the ALJ's determination at step four that Plaintiff can perform her past relevant work. The VE plainly testified that Plaintiff could perform her past composite job of supervisor and mail carrier delivering express mail at the light level, as she actually performed it.

Plaintiff's claim that the VE confirmed she could not meet the standing and walking requirements of the mail delivery portion of her composite job is simply incorrect. Plaintiff points to the following testimony where her counsel questions the VE:

> Q: So I'm confused. If she could not perform it as defined, set aside the medium lifting requirement, because I know that on the composite, she was lifting at the light level according to her testimony. But wouldn't the standing and walking requirement be the same.
>
> A: Well, you know, vocationally, you look at the occupations as jobs performed. And as performed, the supervisor of mail with the added duty of bringing out the express mail packages, it is all described as light duty.
>
> Q: Correct. But as a composite position, we have to look at both positions separately. So, the mail carrier part of the composite position, that would – you stated that a mail carrier would not allow for the ability to only stand for one to two hours at a time.
>
> A: That is correct. The mail carrier position is medium duty, and it is outside of this hypothetical. She could not perform the mail carrier occupation.
>
> Q: Okay. And then, as the composite, *the only change she testified to was the weight distribution* that was expected of her to lift.
>
> A: Correct.
>
> Q: Okay. So, all right, then she would not be able to then have the standing and walking – based on the RFC given by the doctor, she would not meet the

> requirements for the standing and walking requirements of mail carrier, whether she's lifting 20 or whether she's lifting 50.
>
> A: Well, a mail carrier—
>
> Q: Don't combine the two. It's composite. We have to look at them both separately. That's what the law requires.
>
> A: Right.
>
> Q: SO, it's a separate mail carrier—
>
> A: Well, let me – let me get specific. A mail carrier, the way they generally work, and it is up to the mail carrier. They park the mail truck, they deliver mail to one block generally. Some of them will do two blocks, both sides of the street. They can only carry so much mail. They then go back to the truck, drive to the next block. Now, that's not 15 minutes of sitting, that's more like 5 minutes. So, they're doing quite a bit of standing and walking. So, from the perspective of capacity for standing and walking, they would not be able to effectively perform mail carrier duties, regardless that it's medium duty.

DE 16 at 17-18 (emphasis added) (citing R. 48-49).

This testimony does not support the proposition that Plaintiff advances—that the VE stated that she could not perform the standing and walking requirements of her composite job. Rather, Plaintiff's counsel was questioning the VE about the general requirements of the mail carrier position, and the VE responded that the mail carrier position generally required a medium exertion level and was "outside of this hypothetical." R. 48. At the end of the cited testimony, the VE commented expressly about the way that mail carriers "generally work." R. 49. The VE concluded that a person in the hypothetical being addressed would not be able to perform the standing and walking involved in the mail carrier position as it is generally performed. *Id.* Although Plaintiff's counsel attempted to confuse the issue, the VE consistently testified that Plaintiff could perform the mail carrier portion of her supervisor job as she had actually performed it, including any standing and walking involved. The VE's testimony was not contradictory or confusing. The ALJ's decision is supported by substantial evidence.

## **CONCLUSION**

Upon consideration of the parties' submissions and the administrative record, I find that Defendant's administrative decision is supported by substantial evidence and should be affirmed. I respectfully **RECOMMEND** that Defendant's final administrative decision be **AFFIRMED**; that Plaintiff's Motion for Summary Judgment (DE 16) be **DENIED**; that Defendant's Motion for Summary Judgment (DE 21) be **GRANTED**; and that a final judgment be entered in Defendant's favor.

## **NOTICE OF RIGHT TO OBJECT**

The parties shall have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with U.S. District Judge Aileen M. Cannon. Failure to file objections timely shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and Recommendation and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016). **Conversely, if a party does not intend to object to this Report and Recommendation, then that party shall file a Notice of such within five (5) days of the date of this Report and Recommendation.**

**DONE AND RECOMMENDED** in Chambers at Fort Pierce, Florida, this 20th day of January, 2023.

_____
SHANIEK MILLS MAYNARD
U.S. MAGISTRATE JUDGE